Richard A. WEISS, Director DF&A
and Timothy Leathers, Commissioner of Revenue v.
AMERICAN HONDA FINANCE CORPORATION

04-617                                                    200 S.W.3d 381

Supreme Court of Arkansas
Opinion delivered December 16, 2004

[Rehearing denied January 20, 2005.]

*Akerman Senterfitt,* by: *Peter O. Larsen* and *David E. Otero;* and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *John K. Baker,* for appellant.

*Ronna L. Abshure* and *Martha G. Hunt,* Revenue Legal Counsel, for appellee.

JIM HANNAH, Justice. Appellant Arkansas Department of Finance & Administration (DF&A) appeals the partial summary judgment entered by the Pulaski County Circuit Court, Sixth Division, wherein the circuit court found that the complaint was not barred by the doctrine of sovereign immunity and that Honda is a "taxpayer" for the purposes of Ark. Code Ann. § 26-52-309 (Repl. 1997), which is commonly known as the "Bad Debt Statute." We hold that the circuit court erred in finding that Honda is a taxpayer under the "Bad Debt Statute" and entitled to a refund. This is an appeal required by law to be heard by this court; our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(8). *See also* Ark. Code Ann. § 26-18-406 (Repl. 1997).

### Facts

Honda sold and leased motor vehicles and financed the sale of motor vehicles from motor-vehicle dealerships (collectively referred to as "sellers") to consumer purchasers. In a typical transaction, the consumer purchaser entered into an installment contract for the purchase of a motor vehicle from the seller. The

amount financed included the purchase price of the motor vehicle, as well as the gross receipts tax due on the vehicle, which the seller paid to the State. The seller then assigned the installment contract to Honda, and Honda collected the payments. In return, Honda paid the seller the full financed amount. At some point during the period of repayment, the purchaser defaulted on the installment contract. After resorting to available remedies against the purchaser, Honda wrote off the uncollectible portion of the debt for federal income tax purposes.

By a letter dated November 30, 2001, Honda filed a claim with the DF&A for a refund or deduction of the pro rata portion of gross receipts tax related to bad debts arising out of the sale and financing of motor vehicles in Arkansas. The claim was filed pursuant to the Bad Debt Statute, which allows taxpayers that finance sales transactions a deduction or refund for gross receipt tax that was previously reported and remitted, but is now uncollectible. DF&A determined that Honda was not a taxpayer under the Bad Debt Statute and denied Honda's claim for a refund.

Pursuant to Ark. Code Ann. § 26-18-406, Honda appealed DF&A's decision to the circuit court, and partial summary judgment was entered on March 29, 2004. A Rule 54(b) certification was obtained from the circuit court, and DF&A now appeals the partial summary judgment, arguing that the circuit court erred in finding that sovereign immunity did not bar the action and that Honda was a taxpayer under the Bad Debt Statute.

### Standard of Review

As a general rule, in reviewing the grant of a motion for summary judgment, the appellate court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Mack v. Brazil, Adlong, & Winningham, PLC,* 357 Ark. 1, 159 S.W.3d 291 (2004). The appellate court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

However, the granting of this summary judgment motion was based upon the circuit court's interpretation of the Bad Debt Statute. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides *de novo. Cooper Realty Invs., Inc. v. Arkansas Contractors Licensing Bd.,* 355 Ark. 156, 134 S.W.3d 1 (2003).

A tax deduction is allowed only as a matter of legislative grace and one claiming the deduction bears the burden of proving that he is entitled to it and of bringing himself clearly within the terms and conditions as may be imposed by the statute. *St. Louis Southwestern Ry. Co. v. Ragland*, 304 Ark. 1, 4, 800 S.W.2d 410, 412 (1990); *Skelton v. B.C. Land Co.*, 256 Ark. 961, 513 S.W.2d 919 (1974). Similarly, we have held in numerous tax-exemption cases that any tax exemption must be strictly construed against the exemption and any doubt suggests the exemption should be denied. *See, e.g., Rineco Chem. Indus., Inc. v. Weiss*, 344 Ark. 118, 40 S.W.3d 257 (2001); *Technical Servs. of Ark., Inc. v. Pledger*, 320 Ark. 333, 896 S.W.2d 433 (1995); *Pledger v. C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994); *Southwestern Ry., supra.*

In this case, the circuit court's decision denying Honda's claim to a deduction is based upon the circuit court's construction of "taxpayer" under the Bad Debt Statute. This court outlined our rules of statutory construction in *Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 952, 69 S.W.3d 393, 400 (2002), where we stated:

> The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner,* 346 Ark. 234, 57 S.W.3d 683 (2001); *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Stephens v. Arkansas Sch. for the Blind,* 341 Ark. 939, 20 S.W.3d 397 (2000); *Burcham v. City of Van Buren,* 330 Ark. 451, 954 S.W.2d 266 (1997). Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind, supra* (citing *State v. McLeod,* 318 Ark. 781, 888 S.W.2d 639 (1994)). Finally, the ultimate rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith,* 338 Ark. 487, 996 S.W.2d 20 (1999); *Kildow v. Baldwin Piano & Organ,* 333 Ark. 335, 969 S.W.2d 190 (1998).

With this standard of review in mind, we turn to Honda's argument on appeal.

### Sovereign Immunity

DF&A argues that sovereign immunity bars Honda's action in this case because Honda is not a taxpayer and only taxpayers may receive a refund under the "Bad Debt Statute." Article 5, § 20 of the Constitution of Arkansas provides: "The State of Arkansas shall never be made Defendant in any of her courts." Sovereign immunity is jurisdictional immunity from suit. *D.H.S. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). However, sovereign immunity may be waived. *Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). In its complaint, Honda sought to enforce its rights as a taxpayer under the Bad Debt Statute. Ark. Code Ann. § 26-18-406 (Supp. 2003). This case is a suit to compel a refund under a statute that provides for a refund. As DF&A indicates, if Honda is a taxpayer, then suit would be proper. By providing the remedy of a refund under the proper circumstances, the State waived sovereign immunity. There is no merit to DF&A's argument that sovereign immunity bars this action.

### Meaning of "Taxpayer" for the Purposes of the Bad Debt Statute

DF&A asserts that Honda is not a taxpayer under the "Bad Debt Statute." Section 26-52-309 provides:

> (a) In computing the amount of tax due under the Arkansas Gross Receipts Act, § 26-52-101 et seq., and any act supplemental thereto, taxpayers may deduct bad debts from the total amount upon which the tax is calculated for any report. Any deduction taken or refund paid which is attributed to bad debts shall not include interest.

> (b)(1) For purposes of this section, "bad debt" means any portion of a debt for an amount which a taxpayer has reported as taxable which the taxpayer legally claims as a bad debt deduction for federal income tax purposes.

> (2) Bad debts include, but are not limited to, worthless checks, worthless credit card payments, and uncollectible credit accounts.

> (3) Bad debts do not include financing charges or interest, uncollectible amounts on property that remain in the possession of the taxpayer or vendor until the full purchase price is paid, expenses

incurred in attempting to collect any debt, debts sold or assigned to third parties for collection, and repossessed property.

(c) Bad debts incurred for sales made prior to November 9, 1983, shall not be deducted.

(d) Bad debts must be deducted within three (3) years of the date of the sale for which the debt was incurred.

(e) If a deduction is taken for a bad debt and the taxpayer subsequently collects the debt in whole or in part, the tax on the amount so collected shall be paid and reported on the next return due after the collection.

■■ While Honda was the ultimate source of the funds used to pay the gross receipt tax due on the motor vehicles, the gross receipt tax was actually paid by the sellers. The sellers were later reimbursed by Honda. However, the party who actually paid the gross receipts tax is not automatically a "taxpayer" for the purposes of the Bad Debt Statute. To be a "taxpayer" for the purposes of the Bad Debt Statute, Honda must be a "person liable to remit a tax hereunder or to make a report for the purpose of claiming any exemption from payment of taxes levied by [the Gross Receipts Act.]" Ark. Code Ann. § 26-52-103(a)(5) (Repl. 1997). We first note that Honda is a "person" under the Bad Debt Statute, as corporations are included within the definition of "person." *See* Ark. Code Ann. § 26-52-103(a)(1) (Repl. 1997). While it is clear that Honda was the source of payment of the gross receipts tax to the State, the parties disagree on the issue of whether Honda was *liable* to remit the tax. "Liable" is not defined for the purposes of the Bad Debt Statute. *Black's Law Dictionary* defines "liability," in part as:

1. The quality or state of being legally obligated or accountable;
. . .

2. A financial or pecuniary obligation; DEBT < tax liability >
. . .

932 (8th ed. 2004).

■ DF&A contends that for the purposes of the motor vehicle gross receipts tax, the taxpayer, or person liable to remit the tax, is the consumer. Section 26-52-510(a)(1)(A) (Repl. 1997) provides:

> *The tax levied* by this chapter and all other gross receipts taxes levied by the state *in respect to the sale of new or used motor vehicles*, trailers, or semitrailers *required to be licensed in this state shall be paid by the consumer* to the Director of the Department of Finance and Administration instead of being collected by the dealer or seller, and it is the mandatory duty of the director to require the payment of such tax at the time of registration before issuing licenses for new or used motor vehicles or trailers.

(Emphasis added.) DF&A's argument is well-taken. Clearly, Honda is not liable to remit the tax.

■ Honda notes that it possesses an Arkansas Sales and Use Tax Permit and pays substantial tax in Arkansas. Because Honda is not *required* to remit taxes and make reports of those taxes for motor vehicle gross receipts tax and make reports of that tax, then Honda cannot claim that it is a "taxpayer" in the sale of motor vehicles. It is possible to be a taxpayer for one kind of tax, while not a taxpayer for another kind of tax.

DF&A argues that Honda is not a "taxpayer" as defined under § 26-52-103(a)(5) and, therefore, it is not a taxpayer under DF&A's Regulation 1994-3.

That regulation provides in part:

> Pursuant to authority given the Commission of Revenues by subsection (b) of Section 1 of Act 293 of 1991 (Ark. Code Ann. §§ 27-14-906(b)), after the effective date of this regulation, *lienholders* and motor vehicle dealers *may apply for registration and certificates of title on behalf of the purchasers* of new or used vehicles. . . . The dealer or *lienholder* shall file the application with the Commissioner, shall attach thereto a copy of the instrument creating and evidencing the lien or encumbrance and *shall pay all taxes* and fees due *for such registration and issuance of a title.*

■ The only party who is *liable* to pay the motor vehicle gross receipts tax is the consumer. Regulation 1994-3 *allows* lienholders to pay gross receipts tax *on behalf of* consumers; however, this allowance does not transfer ultimate liability of payment of the gross receipts tax from the consumer to the lienholder.

Honda further argues that it is a "taxpayer" because it meets the requirements of a "taxpayer" as defined by the Arkansas Tax Procedure Act, which is codified at Ark. Code Ann. § 26-18-101 (Repl. 1997). A "taxpayer" under this Act is defined as follows:

(A) Any person subject to or liable for any state tax;

(B) Any person required to file a return, or to pay, or withhold and remit any tax required by the provisions of any state tax law;  or

(C) Any person required to obtain a license or a permit or to keep any records under the provisions of any state tax law;  . . .

Ark. Code Ann. § 26-18-104(14) (Repl. 1997).

We need not address the merits of Honda's argument that it is a "taxpayer" under the Arkansas Tax Procedure Act. The Bad Debt Statute is a part of the Arkansas Gross Receipts Act, and "taxpayer" is specifically defined under that Act, for the purposes of that Act. We have long held that a general statute must yield when there is a specific statute involving particular subject matter. *See, e.g., Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n,* 342 Ark. 591, 29 S.W.3d 730 (2000); *Shelton v. Fiser,* 340 Ark. 89, 8 S.W.3d 557 (2000).

### *Assignment*

DF&A argues that Honda acquired no rights as a taxpayer by way of assignment of the contracts by the sellers. We agree. As already discussed, under the current statutes, it is only the purchaser that is liable to pay the tax and therefore the taxpayer. The seller was thus not a taxpayer, and Honda could not acquire from the sellers a right they did not have. An assignee can receive no better right than that possessed by the assignor. *Guaranty Nat'l. Ins. Co. v. Denver Roller,* 313 Ark. 128, 854 S.W.2d 312 (1993).

Reversed.

BROWN, J., concurs on the grounds set out in his concurrence to *DaimlerChrysler Services North America, LLC v. Weiss,* 360 Ark. 188, 200 S.W.3d 405 (2004).

THORNTON, J., not participating.