CITIFINANCIAL RETAIL SERVICES DIVISION of CITICORP TRUST BANK, FSB *v.* Richard WEISS, in His Official Capacity as Director, Arkansas Department of Finance and Administration; and Timothy J. Leathers, in His Official Capacity as Commissioner of Revenue, Arkansas Department of Finance and Administration

07-551                                                                 271 S.W.3d 494

Supreme Court of Arkansas
Opinion delivered January 17, 2008

*Akerman Senterfitt,* by: *Peter O. Larsen, David E. Otero,* and *Cynthia DeBula Baines;* and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *John K. Baker* and *Jeffrey L. Spillyards,* for appellant.

*Ronna L. Abshure* and *Martha G. Hunt,* Revenue Legal Counsel, for appellees.

Tom Glaze, Justice. Citifinancial Retail Services Division of Citicorp Trust Bank (Citifinancial) appeals a Pulaski County Circuit Court order granting summary judgment in favor of the Arkansas Department of Finance & Administration (DF&A). The circuit court found that Citifinancial was not a "taxpayer" under Ark. Code Ann. § 26-52-309 (Supp. 2005), and therefore was not entitled to a refund for sales taxes paid on defaulted consumer credit accounts. The circuit court also determined that the absence of a statutory provision allowing for the assignment of tax refunds barred Citifinancial's claim that it qualified as a taxpayer as an assignee. We affirm.

This case arises from consumer sales transactions Citifinancial financed through its credit programs with Arkansas retailers. Citifinancial paid the retailers the full amount of these purchases, including the sales taxes, and the consumers agreed to repay Citifinancial on an installment or credit basis. Under these financing agreements, the retailers assigned all rights associated with the credit contracts to Citifinancial; in return, Citifinancial paid the retailers the full amount of the purchases, including the sales tax, and the retailers remitted the sales tax to the State. When purchasers defaulted on their payment obligations and Citifinancial determined that the debts were uncollectible, the debts were written off by Citifinancial on its federal income taxes.

Citifinancial filed claims for bad-debt refunds under Ark. Code Ann. § 26-52-309, the "Bad Debt Statute," which is a provision within the Arkansas Gross Receipts Act, Ark. Code Ann. § 26-52-101 et seq., that allows taxpayers to receive a sales-tax refund proportionate to the defaulted amounts of consumer purchases. DF&A denied Citifinancial's applications for sales-tax refunds, because it determined that Citifinancial was not a taxpayer under the statute. As a result of DF&A's denial of its refund requests, Citifinancial filed complaints that were consolidated by the Pulaski County Circuit Court. Citifinancial and DF&A filed cross-motions for summary judgment, and the Pulaski County Circuit Court issued an order on February 7, 2007,

granting DF&A's motion for summary judgment, determining that the material facts were undisputed and that DF&A was entitled to judgment as a matter of law.

The circuit court granted DF&A's motion for summary judgment based on its interpretation of the Arkansas Gross Receipts Act and the Bad Debt Statute. However, issues of statutory interpretation are reviewed *de novo,* because this court determines statutory meaning. *City of Maumelle v. Jeffrey Sand Co.,* 353 Ark. 686, 120 S.W.3d 55 (2003). While we are not bound to the trial court's ruling, we will accept the trial court's interpretation of a statute unless it is shown that the trial court erred. *R.N. v. J.M.,* 347 Ark. 203, 61 S.W.3d 149 (2001).

Citifinancial first argues that it is a "taxpayer" under the Bad Debt Statute, § 26-52-309 (Supp. 2005), which provides in pertinent part:

> (a) In computing the amount of tax due under the Arkansas Gross Receipts Act, § 26-52-101 et seq., and any act supplemental thereto, taxpayers may deduct bad debts from the total amount upon which the tax is calculated for any report. Any deduction taken or refund paid which is attributed to bad debts shall not include interest.

> (b)(1) For purposes of this section, "bad debt" means any portion of a debt for an amount which a taxpayer has reported as taxable which the taxpayer legally claims as a bad debt deduction for federal income tax purposes.

> (2) Bad debts include, but are not limited to, worthless checks, worthless credit card payments, and uncollectible credit accounts.

> (3) Bad debts do not include financing charges or interest, uncollectible amounts on property that remains in the possession of the taxpayer or vender until the full purchase price is paid, expenses incurred in attempting to collect any debt, debts sold or assigned to third parties for collection, and repossessed property.

> . . .

> (e) If a deduction is taken for a bad debt and the taxpayer subsequently collects the debt in whole or in part, the tax on the amount so collected shall be paid and reported on the next return due after the collection.

This court previously addressed the meaning of a "taxpayer" under the Bad Debt Statute in *DaimlerChrysler Serv. N.A. v. Weiss*, 360 Ark. 188, 200 S.W.3d 405 (2004), and *Weiss v. American Honda Finance Corp.*, 360 Ark. 208, 200 S.W.3d 381 (2004). In both cases we held that, to qualify for a right to a refund or deduction under the Bad Debt Statute, the definition of "taxpayer" in Ark. Code Ann. § 26-52-103(a)(5) (Repl. 1997) required that the person must be *liable* to remit the sales tax on purchases.[1] *DaimlerChrysler*, 360 Ark. at 195-96, 200 S.W.3d at 409; *American Honda*, 360 Ark. at 215-16, 200 S.W.3d at 386. Although it was undisputed that DaimlerChrysler and Honda were the source of the payments of sales taxes to the state, neither was *required* to do so under Ark. Code Ann. § 26-52-510(a)(1)(A) (Repl. 1997), which provided that the taxes "shall be paid by the consumer . . . instead of being collected by the dealer or seller." DaimlerChrysler and Honda each argued that it effectively paid the sales tax, because it paid the retailers (sellers) the full of amount of the financed purchases, including the sales tax. However, we held that this fact did not transfer the ultimate liability for payment of the sales tax, and a taxpayer under the Bad Debt Statute must have that ultimate liability. *Id.*

■ Citifinancial attempts to distinguish our decisions in *DaimlerChrysler* and *American Honda* from this case on appeal, contending that those prior cases involved the sale of motor vehicles where purchasers were expressly and statutorily designated as the taxpayer, whereas the purchases Citifinancial financed at issue here were "tangible personal property," and the retailers (sellers) were the statutorily designated taxpayers. This distinction is without merit. *DaimlerChrysler* and *American Honda* control: a taxpayer under the Bad Debt Statute is the person *liable* to report and remit sales taxes, and the person liable to remit taxes on sales of the tangible personal property that Citifinancial financed is the retailer (seller). *See* Ark. Code Ann. § 26-52-508(a) (Repl. 1997

---

[1] Ark. Code Ann. § 26-52-103(a) has been amended by Acts No. 154, 181, and 550 of 2007. Effective January 1, 2008, the definition of taxpayer is found at § 26-52-103(a)(22) (Supp. 2007). These Acts are not argued and do not appear to reveal any relevant changes in the issues presented in this appeal. Although the numbering of the definitions cited in *DaimlerChrysler* and *American Honda* has been altered, the definitions relevant to this appeal are not significantly changed.

and Supp. 2005). Accordingly, Citifinancial has no independent right to a statutory bad–debt deduction.

Next, Citifinancial argues that it is an assignee under its financing agreements with the retailers (sellers), allowing Citifinancial to be a "taxpayer" entitled to relief under the Bad Debt Statute. We addressed a similar argument in *American Honda.* There, Honda argued that it became a taxpayer entitled to a refund under the Bad Debt Statute by virtue of its financing agreements with the sellers of motor vehicles. However, having found that Ark. Code Ann. § 26-52-510(a)(1)(A) (Repl. 1997) placed liability for sales taxes for motor vehicle purchases on the consumers, rather than sellers, we held that Honda, as an assignee, could not acquire from the sellers a right the sellers themselves did not possess, and therefore could not become a taxpayer entitled to a refund under the Bad Debt Statute. *American Honda,* 360 Ark. at 217, 280 S.W.3d at 387.[2] Here, Citifinancial revives this argument, but contends that because the retailers (sellers) of tangible personal property under their financing agreements *are* liable to remit sales taxes under § 26-52-508, Citifinancial acquired all rights held by these retailers (sellers) — including the right to claim refunds under the Bad Debt Statute. Citifinancial further argues that because the Bad Debt Statute does not address the transfer of deductions or refunds or expressly prohibit such a transfer, the court must turn to the common law to determine if rights under the Bad Debt Statute are assignable.

Tax exemptions are strictly construed against the exemption, and a strong presumption operates in favor of the taxing power. *Rineco Chemical Industries, Inc. v. Weiss,* 344 Ark. 118, 122, 40 S.W.3d 257, 260 (2001) (citing *Technical Servs. of Ark., Inc. v. Pledger,* 320 Ark. 333, 896 S.W.2d 433 (1995)). In strictly construing tax exemptions, this court has said that "to doubt is to deny the exemption." *Pledger v. C.B. Form,* 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994) (quoting *Pledger v. Baldor Int'l,* 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992)). Additionally, DF&A has interpreted the Bad Debt Statute to preclude assignment of the bad debt refund or deduction, and review of state agency decisions is allowed only under narrow circumstances. *See* Ark. Code Ann. § 25-15-212(h) (Repl. 2002); *Tomerlin v. Nickolich,* 342 Ark. 325, 27 S.W.3d 746

---

[2] We did not address the assignment issue in *DaimlerChrysler,* because it was not raised on appeal. *See DaimlerChrysler,* 360 Ark. at 197, 200 S.W.3d at 410.

(2000). While a statutory interpretation by the agency responsible for its execution is not conclusive, it is highly persuasive and should not be reversed unless it is clearly wrong. *See Pledger v. Boyd*, 304 Ark. 91, 93, 799 S.W.2d 807, 808 (1990).

A tax deduction is allowed only as a matter of legislative grace, and one claiming the deduction bears the burden of proving that he is entitled to it by bringing himself clearly within the terms and conditions as may be imposed by the statute. *American Honda*, 360 Ark. at 213, 200 S.W.3d at 384. The language and definitions of the Arkansas Gross Receipts Act and the Bad Debt Statute are plain and unambiguous, and we conclude that Citifinancial is not entitled to rights under the Bad Debt Statute by means of assignment.

Additionally, Citifinancial urges that we adopt the holding in *Puget Sound National Bank v. Department of Revenue*, 123 Wash. 2d 284, 868 P.2d 127 (1994), a case cited in the concurring opinion in *DaimlerChrysler*. In *Puget Sound*, the Washington Supreme Court addressed a statute similar to the Arkansas Bad Debt Statute. Washington's statutory scheme allowed retailers to apply for refunds for sales taxes on financed debts that were subsequently deemed uncollectible and written off for federal income tax purposes. The Washington Supreme Court found that third-party financing companies, as the sellers' assignees, held the same rights as the sellers under their financing agreements and were eligible to claim tax refunds for bad debts.

*Puget Sound* represents the minority view.[3] The majority of states that have addressed this issue have strictly construed

---

[3] *See, e.g., Household Retail Services, Inc. v. Commissioner of Revenue*, 448 Mass. 226, 859 N.E.2d 837 (2007) (assignee not a "vendor" as required by bad debt statute; tax credits are conferred by legislative grace and are not assignable as a contractual right); *Department of Taxation v. DaimlerChrysler Serv. N.A.*, 121 Nev. 541, 119 P.3d 135 (2005) (plain meaning of a tax statute prevails over general assignment principles unless there is an express provision permitting the assignment and granting an assignee the benefit of the tax credit); *Daimler-Chrysler Serv. N.A. v. Arizona Dep't of Revenue*, 210 Ariz. 297, 110 P.3d 1031 (2005) (tax credits are conferred by legislative grace and are not assignable as a contractual right without explicit statutory language); *Chrysler Financial Co., L.L.C. v. Wilkins*, 102 Ohio St.3d 443, 812 N.E.2d 948 (2004) (precluding Chrysler from taking a bad debt deduction based on an alleged assignment from car dealers); *DaimlerChrysler Servs. N. Amer., L.L.C. v. State Tax Assessor*, 817 A.2d 862 (Me. 2003) (finding DaimlerChrysler was not entitled to a bad debt deduction as assignee of vehicle retailer); *In re Appeal of Ford Motor Credit Co.*, 275 Kan. 857, 69 P.3d 612, 621 (2003) ("Neither the statute or regulation include the assignee of the

bad-debt statutes to find that the plain meaning of a tax statute prevails over general assignment principles unless there is an express provision that permits an assignment and grants an assignee the benefit of the tax credit. Further, in *Puget Sound*, the Washington court emphasized that the definition of "seller" included every "person" and that the relevant statute defined a "person" as an ″ assignee." 868 P.2d at 129-30 (citing Wash. Rev. Code §§ 82.08.010(2), 82.04.030). In contrast, the Arkansas Gross Receipts Act does not include "assignee" in the definition of either a "person" or a "taxpayer." Ark. Code Ann. § 26-52-103(a)(8), (11) (Supp. 2005).[4]

Finally, Citifinancial claims that Arkansas now receives a windfall when consumers default on their accounts because the state receives sales taxes from sellers on purchases that Citifinancial finances for the full amount. While this may be the practical result of a default of debt financed by Citifinancial, a person still must meet the definition of taxpayer and satisfy all the requirements of the Bad Debt Statute to be entitled to a refund. Citifinancial's status as an assignee does not transfer liability for payment of the sales tax by sellers, nor does the statutory definition of "person" or "taxpayer" under § 26-52-103(a) include "assignees." The retailers (sellers) at issue here received payment from Citifinancial for purchases of tangible personal property, but the retailers remained liable for paying the sales tax to the state. Although Citifinancial paid the retailers (sellers) the full, outstanding price for the purchases, including the sales tax, Citifinancial does not file returns to report and remit Arkansas sales taxes, and Citifinancial is not the party ultimately responsible for the payment of the sales taxes that arise from the consumer purchases that they finance.

---

retailer. Although not specifically limited to the retailer paying the tax, the definition of retailer is not broad enough to include the assignee of such retailer."); *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216 (Tenn. Ct.App. 2000) (precluding assignee of dealers from taking a sales tax credit that is only available to the " 'dealer who has paid the tax' ") (quoting Tenn. Code Ann. § 67-6-507(E)(1)); *Dep't of Rev. v. Bank of Amer., N.A.*, 752 So. 2d 637, 643 (Fla. Dist. Ct.App. 2000) (prohibiting an assignee from claiming a refund by concluding that rules governing tax statutes trump general assignment principles).

4 Following our decision in *DaimlerChrysler*, the General Assembly made changes to §§ 26-52-103 and 26-52-309 by Act 181 of 2007. These changes do not affect prior law, and the General Assembly did not revise the Arkansas Code to allow assignees to become eligible for bad-debt refunds.

This court has repeatedly held that the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable errors. *See, e.g., Jordan v. Atlantic Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001); *Norton v. Hinson*, 337 Ark. 487, 989 S.W.2d 535 (1999); *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999). While Citifinancial desires that Arkansas provide tax relief for defaulted debt under its financing agreements for purchases of tangible personal property, this is an issue of policy that should be addressed by the General Assembly.

Affirmed.

